UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/28/2026

H.A.,

Petitioner,

-against-

KENNETH GENALO, *in his official capacity as* Field Office Director of New York, Immigration and Customs Enforcement; TODD M. LYONS, *in his official capacity as* Acting Director U.S. Immigrations and Customs Enforcement; MARKWAYNE MULLIN, *in his official capacity as* Secretary of Homeland Security; PAM BONDI, *in her official capacity as* Attorney General,

Respondents.

26 Civ. 2706 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, H.A., an Ecuadorian citizen, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of her detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1. H.A. contends that her Fifth Amendment right to due process was violated when she was detained on April 1, 2026, after attending a hearing at a New York City immigration court. *See id.* ¶¶ 3, 78–90.[1] H.A. seeks immediate release from custody or, in the alternative, a bond hearing. *Id.* ¶ 5. For the reasons stated below, the Petition is granted, and the Court orders H.A.'s immediate release from custody.[2]

---

[1] H.A. also claims that her detention violates her Sixth Amendment right to trial. *See* Pet. ¶¶ 48–51. Because the Court decides the Petition on other grounds, it does not evaluate the merits of H.A.'s argument that her detention violates the Sixth Amendment.

[2] Having reviewed the Petition and the government's opposition and accompanying exhibits, the Court finds that the Petition "present[s] only issues of law," and may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously "as law and justice require").

**BACKGROUND**

H.A. is a 27-year-old Ecuadorian woman who is married to a U.S. citizen, and is the mother of a seven-year-old child.  Pet. ¶ 6.  On March 14, 2024, H.A. entered the United States at or near Nogales, Arizona, and encountered United States Customs and Border Protection ("CBP") officers.  Gov't Ltr. ¶ c(a), ECF No. 7; Williams Decl. ¶ 4, ECF No 8.  On that same day, after CBP officers apprehended and processed H.A., she was served with a Notice to Appear ("NTA") charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).  NTA, ECF No. 7-2; *see also* Williams Decl. ¶ 4.  The NTA directed her to appear before an immigration judge in New York at 26 Federal Plaza on May 5, 2025.  NTA at 1; Williams Decl. ¶ 4.  She was then released on her own recognizance, "[i]n accordance with [8 U.S.C. § 1226]."  *See* Form I-220A ("Order of Release"), ECF No. 7-3; Williams Decl. ¶ 5.

On February 5, 2025, H.A. filed an application for relief from removal with the Executive Office of Immigration Review ("EOIR").  Williams Decl. ¶ 6.

On May 5, 2025, H.A. appeared *pro se* before an immigration judge, who scheduled a hearing in her case for March 15, 2028.  *Id.* ¶ 7.

On March 15, 2026, H.A. was charged in Brooklyn for petit larceny, in violation of New York Penal Law ("NYPL") § 155.25 and criminal possession of stolen property in the fifth degree, in violation of NYPL § 165.40.  *See* Record of Arrests and Prosecutions ("RAP") Sheet at 5, ECF No. 7-5; *see also* Williams Decl. ¶ 8; Pet. ¶ 2.  At her arraignment on these charges, she was released on her own recognizance.  Pet. ¶ 2.  As of April 21, 2026, both charges had been dismissed and sealed.  *See* ECF No. 12-1 (certificate of disposition).

On April 1, 2026, after exiting a scheduled immigration court check-in at 26 Federal Plaza, H.A. was arrested and served with a Form I-200 arrest warrant and taken into ICE

2

custody.  *See* Williams Decl. ¶ 9; Gov't Ltr. ¶ c(a); Warrant, ECF No. 7-6.  On that same day, H.A. filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241.  *See generally* Pet. On April 5, 2026, Petitioner was transferred to Delaney Hall Detention Center in Newark, New Jersey, where she remains detained.  Williams Decl. ¶ 10.

## DISCUSSION

I.      Request to Proceed Under a Pseudonym

First, H.A. seeks to proceed under a pseudonym.  *See* ECF No. 3.  The government has not opposed this request.  *See generally* Gov't Ltr.

Generally, under Federal Rule of Civil Procedure 10(a), "[t]he title of [a] complaint must name all the parties."  This requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008).  But courts have "carved out a limited number of exceptions to the general requirement of disclosure of the names of parties," where "the plaintiff's need for anonymity" may overcome "countervailing interests in full disclosure."  *Id.* at 189 (cleaned up).  "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  *Id.*  To do so, the Second Circuit has explained that courts may consider the following "non-exhaustive" list of factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature . . . ;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties . . . ;
>
> (3) whether identification presents other harms and the likely severity of those harms, . . . including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity . . . ;

3

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, . . . particularly in light of [her] age . . . ;

(5) whether the suit is challenging the actions of the government or that of private parties . . . ;

(6) whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court . . . ;

(7) whether the plaintiff's identity has thus far been kept confidential . . . ;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity . . . ;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities . . .; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (cleaned up). "[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id.* at 191 n.4. A plaintiff seeking to proceed under a pseudonym must also base her allegations on more than just "mere speculation." *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Here, the factors set forth above weigh in favor of granting H.A.'s request. The underlying facts of this petition concern sensitive personal information relating to H.A.'s immigration proceedings and applications. Because she fears persecution if deported, *see* ECF No. 3 at 4–5, public disclosure of H.A.'s name and information in connection with this case could place her in danger if she returns to Ecuador. The public's interest in knowing H.A.'s identity is weak because the Petition concerns only issues of law, *see supra* n.2. Further, the government will not be prejudiced by H.A.'s anonymity because her identity has already been

disclosed to the government, and the Court finds no other prejudice to the government by allowing H.A. to proceed under a pseudonym. *See generally* Gov't Ltr. Accordingly, H.A.'s request to proceed anonymously in this litigation is granted.

II.     Habeas Petition

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* In analyzing H.A.'s due process claim, the Court holds that (1) H.A. is not subject to detention under 8 U.S.C. § 1225(b)(2)(A) or § 1226(c)(1)(E); and (2) because her detention is governed by § 1226(a), and she was released on her own recognizance subject to conditions under the Order of Release, her due process rights were violated when ICE detained her without first making an individualized determination as to her dangerousness and flight risk.

A.  Basis of Detention

The government seeks to justify H.A.'s detention under 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(c)(1)(E), which both provide for mandatory detention of certain noncitizens. *See* Gov't Ltr. ¶¶ a(a), c(a).

1.  Section 1225(b)

As it relates to § 1225(b), the government "acknowledges that the Court's decisions in *Gonzalez* [*v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025),] and more recently in *Galvez Galvez* [*v. Francis*, No. 26 Civ. 161 (AT), 2026 WL 84493 (Jan. 12, 2026)],

5

would control resolution of th[e] legal issue" regarding whether H.A. is detained subject to § 1226 or § 1225(b)(2)(A). Gov't Ltr. ¶¶ a(a), c(a), d(a) & n.1; Opp. Mem. at 2, 10-13.[3]

Since H.A. filed her petition, the Second Circuit has confirmed that "[s]ection 1226(a) plainly applies to noncitizens, like [H.A.], who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha v. Freden*, No. 25-3141, slip. op. at 14 (2d Cir. Apr. 28, 2026). It is undisputed that when H.A. entered the United States in 2024, she was "not . . . admitted or paroled after inspection by an [i]mmigration [o]fficer," "subject to removal" proceedings, and released on her own recognizance. NTA at 1; *see* Order of Release at 1.

Section 1225(b)(2), on the other hand, "applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Cunha*, slip op. at 17 ("Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'" (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). Although H.A. is an applicant for admission under the statutory definition of § 1226(b)(2) because she is "present in the country and has never been admitted," she is not requesting lawful entry into the United Sates because she already entered the country two years ago; instead, she is now seeking relief from removal. *Id.* at 17. Therefore, H.A. is not subject to mandatory detention under § 1225(b)(2)(A).

---

[3] In opposition to the Petition, the government incorporates by reference the arguments it made in *Gonzalez*. *See* Gov't Ltr. ¶ d(a) n.1. In this order, the Court refers to the opposition brief filed at ECF No. 18 in *Gonzalez* as Opp. Mem.

2.  Section 1226

In the alternative, the government argues that even if the Court finds that H.A.'s detention is justified under § 1226, H.A. is subject to mandatory detention under § 1226(c) because she "has been arrested and charged with theft and larceny crimes."  Gov't Ltr. ¶ c(a). H.A. contends that "[a]bsent a conviction, mandatory civil immigration detention based solely on a charge or arrest, . . . violates [her] right to due process."  Reply at 2, ECF No. 11; *see also* Pet. ¶¶ 40–47.  She further argues that because her criminal charges have been dismissed, the mandatory detention provision under § 1226(c) does not apply to her.  *See* Pet'r Ltr. at 1, ECF No. 12.

"Section 1226 generally governs the process of arresting and detaining [noncitizens] pending their removal."  *Jennings*, 583 U.S. at 288.  Section 1226(a) establishes a "discretionary detention framework," *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citation omitted), and provides that for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."  8 U.S.C. §§ 1226(a)(1)-(2).  Section 1226(c), however, "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)," *Jennings*, 583 U.S. at 289, when that noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,"  8 U.S.C. § 1226(c)(1)(E); *see* Laken Riley Act, Pub. L. No. 119-1, § 2(1)(C), 139 Stat. 3, 3 (2025).

Courts in this District have found, however, that § 1226(c) "does not compel detention where charges have been dismissed." *Guzman v. Arteta*, No. 26 Civ. 2808, 2026 WL 1045920, at \*4 (S.D.N.Y. Apr. 16, 2026); *see also Rueda Torres v. Francis*, No. 25 Civ. 8408, 2025 WL 3168759, at \*5 (S.D.N.Y. Nov. 13, 2025) ("[T]he text of § 1226(c)(1)(E)(ii) does not provide for mandatory detention where, as here, charges have been dropped." (citing *Aguilar Lares v. Bondi*, No. 25 Civ 01562, Mem. Op. & Order, ECF No. 18 at \*9 (E.D. Va. Oct. 29, 2025) ("The plain language makes clear that detention is not mandatory if the criminal charges have been dismissed."))); *Sidqui v. Almodovar*, No. 25 Civ. 9349, 2026 WL 251929, at \*12 (S.D.N.Y. Jan. 30, 2026) (finding that § 1226(c) does not apply when the relevant charges have been dismissed).

The Court finds these decisions to be persuasive. Congress chose to use the present tense "is charged with" instead of past tense terms like "was" or "has been" when defining the scope of the government's obligation to detain noncitizens. *See* 8 U.S.C. § 1226(c)(1)(E)(ii). "Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person is 'charged with' that crime, present tense." *Guzman*, 2026 WL 1045920, at \*3 (quoting *Helbrum v. Williams Olson*, No. 25 Civ. 349, 2025 WL 2840273, at \*5–6 (S.D. Iowa Sep. 30, 2025)).

The structure of § 1226(c)(1)(E)(ii) references the steps of a criminal proceeding—starting with a filing of charges or an arrest, then a conviction. A reading of § 1226(c) that calls for detention "no matter the ultimate disposition of those charges" would render the words "is convicted of" superfluous because "no Defendant could possibly proceed to a conviction without first being charged." *Rueda Torres*, 2025 WL 3168759, at \*5 (citation omitted). Therefore, although "detention remains mandatory if charges are filed, . . . it is no longer required if charges are dropped or if a person is acquitted. Any other interpretation would render superfluous the

8

language in the statute requiring detention under circumstances other than when a person 'is arrested for' or 'is charged with' certain crimes." *Id.* (quoting § 1226(c)(1)(E)(ii)).  Accordingly, H.A. is not subject to mandatory detention under § 1226(c) on the basis of charges that have been dropped.

Further, with respect to H.A.'s charge of Criminal Possession of Stolen Property in the Fifth Degree, in violation of NYPL § 165.40, the Court disagrees with the government's contention that this charge satisfies the elements of "theft and larceny"; the offense does not involve the taking of property and, therefore, cannot serve as a predicate offense requiring mandatory detention under § 1226(c).  Gov't Ltr. ¶ d(a).

Under NYPL § 165.40, "[a] person is guilty of criminal possession of stolen property in the fifth degree when [s]he knowingly possesses stolen property, with intent to benefit h[er]self or a person other than an owner thereof or to impede the recovery by an owner thereof."  Theft is not defined in the New York statutes.  The Court, therefore, looks to the plain meaning of theft under various dictionary definitions.  All definitions include acts of "stealing," "taking," or "removing" of "property," not mere possession.  *See, e.g.*, *Theft*, Black's Law Dictionary (12th ed. 2024) ("The wrongful taking and removing of another's personal property with the intent of depriving the true owner of it; larceny. . . . Broadly, any act or instance of stealing."); *Guzman*, 2026 WL 1045920, at *4 (citing:  (1) the Oxford English Dictionary definition of theft as "the felonious taking away of the personal goods of another"; (2) the Merriam-Webster Dictionary definition of theft as "the act of stealing specifically: the felonious taking and removing of personal property with intent to deprive the rightful owner of it," or "an unlawful taking (as by embezzlement or burglary) of property"; and (3) the Cambridge Dictionary definition of theft as

"the act of dishonestly taking something that belongs to someone else and keeping it" (cleaned up)).

The Court reaches the same conclusion by examining the definition of larceny, which "New York law defines . . . in the exact way that dictionary definitions define the word 'theft.'" *Guzman*, 2026 WL 1045920, at *4. "Under the law of New York, the crime of theft at common law has been absorbed into statute in the general definition of larceny. . . . It includes a 'trespassory taking', with intent to deprive another of the property." *Aqua Craft I, Inc. v. Bos. Old Colony Ins. Co.*, 518 N.Y.S.2d 863, 866 (Sup. Ct. 1987) (quoting NYPL § 155.05 ("A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.")).

Therefore, in addition to the reasons stated above regarding the dismissal of the charge, the Court finds that because NYPL § 165.40 does not contain the essential elements of larceny, this charge cannot be a basis for mandatory detention under § 1226(c).

B.  Due Process

Because H.A. is not subject to mandatory detention under either § 1225(b) or § 1226(c), the Court finds that she is subject only to discretionary detention under § 1226(a).

"At the outset, the Court rejects [any] assertion that [H.A.] is not entitled to due process under the Fifth Amendment and is instead limited only to the process provided by Congress." *Cuy Comes,* 2025 WL 3206491, at *4. H.A. is not, as the government purports, an "alien on the threshold of initial entry," Opp. Mem. at 11 (citation omitted), but rather a noncitizen who has been living in the country since 2024, Gov't Ltr. ¶ c(a). *See Cuy Comes*, 2025 WL 3206491, at *4–5. As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons'

10

within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

As in *Cuy Comes*, 2025 WL 3206491, at \*5, and *Gonzalez*, 2025 WL 2961626, at \*3, the government does not dispute that H.A. was detained without an individualized determination as to her risk of flight or her danger to the community. *See* Gov't Ltr. ¶ c(a) (arguing that ICE "revoked [H.A.'s order of release on recognizance] because of her criminal charges."), ¶ d(a); ("[W]hile the government does not consent to issuance of the writ, while reserving all rights, including the right to appeal, . . . the government hereby relies upon, and incorporates by reference, the legal arguments it presented in *Gonzalez*[, 2025 WL 2961626] and the Court can decide that issue without further briefing.").[4]

For the reasons explained in *Cuy Comes*, 2025 WL 3206491, at \*4–5, *Gonzalez*, 2025 WL 2961626, at \*3, and *Lopez Benitez*, 795 F. Supp. 3d at 492–96, among other cases, the Court concludes that an individualized determination and exercise of discretion is required when detaining someone pending removal proceedings under § 1226(a), and, therefore, H.A.'s due process rights were violated when she was "re-detained by immigration authorities with no deliberative process prior to, or contemporaneous with the detention." *Lopez Benitez*, 795 F. Supp. 3d at 498 (quoting *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at \*4 (S.D.N.Y. June 18, 2025)).

---

[4] To the extent the government contends that its arrest of H.A. was made pursuant to a violation of her Order of Release, the Court rejects any such argument for the same reasons set forth in *Urbano v. Genalo*, No. 26 Civ. 1466, 2026 WL 867130, at \*5 (S.D.N.Y. Mar. 29, 2026) ("Even if the government sought to redetain [H.A.] on the basis of [her] arrests, the arrests do not constitute a violation of the . . . Order of Release's condition that [s]he 'not violate any local, State or Federal laws or ordinances,' because an arrest is not tantamount to a conviction.") Here, as in *Urbano*, although the Order of Release contains a similar requirement that H.A. not violate any local, State, or Federal laws or ordinances, *see* Order of Release, H.A. was only arrested, not convicted.

To the extent the government argues that H.A.'s detention was made pursuant to its discretionary authority, there is no valid exercise of discretion where "there is nothing to suggest that [the government] exercised any discretion *at all* in detaining [H.A.] . . . in contravention of the basic procedural requirements of § 1226(a)." *Cuy Comes*, 2025 WL 3206491, at *5 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 494–95). The government does not argue that DHS or ICE made an individualized custody determination prior to or contemporaneously with H.A.'s arrest. *See generally* Gov't Ltr.; Opp. Mem. Rather, the government contends that it need not make *any* custody determination upon arrest because H.A.'s detention is mandatory. The Court rejects this argument. Because H.A. was detained without the government "first conducting an individualized assessment as to [her] dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion," her detention violates her Fifth Amendment due process right, and her release is required. *Lopez Benitez*, 795 F. Supp. 3d at 496.

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 1, is GRANTED. The government is ordered to immediately release H.A. from custody.

The government must brief its authority, if any consistent with this Order, to (1) redetain H.A. without a valid exercise of discretion; (2) deny bond to H.A. in any subsequent proceeding on the ground that she must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) or § 1226(c)(1)(E), absent a change in relevant circumstances; or (3) invoke the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) if H.A. is granted bond; or (4) impose additional conditions of release or burdens on H.A.'s liberty.

If, instead, the government confirms that it will take none of those steps with respect to H.A. without prior notice of at least one week provided to her and the Court, it need not file such

briefing.  *See Quispe-Sulcaray v. Noem et al.*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025).

By **April 29, 2026**, the government shall file a letter on the docket certifying compliance with this Order.

SO ORDERED.

Dated: April 28, 2026
      New York, New York

                                    ANALISA TORRES
                            United States District Judge